## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| PETER J. WELLIN, *et. al.*, | ) | No. 2:14-cv-4067-DCN |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| WENDY WELLIN, *individually and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2001*, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on two motions to dismiss filed by defendant Wendy Wellin – one in her individual capacity ("Wendy") and one in her official capacity as trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2001 ("trustee Wendy").  For the reasons stated below, the court denies both motions.

## I.  BACKGROUND[1]

On October 20, 2014, Keith Wellin's ("Keith") three adult children – Peter J. Wellin ("Peter"), Cynthia Wellin Plum ("Cynthia"), and Marjorie Wellin King ("Marjorie") (collectively, "the Wellin children") – filed a complaint against Wendy in both her individual and official capacities.  The complaint alleges that

> [t]hrough her prolonged and consistent pattern of mistreatment toward the children and Keith, Wendy defamed the children to Keith and others, unduly influenced and coerced Keith with respect to his finances and estate planning, isolated Keith from his children, grandchildren, and other relatives, instilled in Keith anger, distrust, and hatred toward his three children, and, ultimately, enriched herself and her family at the expense of the children and Keith's other lineal descendants.

---

[1] These facts are drawn from the plaintiffs' complaint.

1

Compl. ¶ 3.

Wendy, to whom Keith was married for almost twelve years before his death on September 14, 2014, was Keith's fourth wife.  Id. ¶¶ 14-15.  The Wellin children, who collectively have eight children, assert that both they and their children maintained a "close, loving relationship" with Keith until 2013.  Id. ¶¶ 17-18.  At the time of his marriage to Wendy, Keith's net worth exceeded $150 million.  Id. ¶ 20.

In 2001, Keith, with the assistance of attorney Tom Farace ("Farace"), created the Keith S. Wellin Florida Revocable Living Trust ("the Trust"[2]), which was the primary instrument that provided for distribution of Keith's assets upon his death.  Id. ¶ 33. Under the terms of the Trust, Keith was the trustee, Peter was the successor trustee, and Cynthia was the backup successor trustee.  Id. ¶ 34.  Over the course of his marriage to Wendy and prior to 2013, Keith revised the Trust on multiple occasions, increasing the amount Wendy would receive upon his death from $7.6 million to $25 million.  Id.

Beginning in 2011, Keith's health began to deteriorate, which increased his dependence on Wendy and caregivers controlled by Wendy to provide for his health and safety.  Id. ¶ 48.  In the spring of 2013, Keith's mental capacity declined and continued to decline until his death.  Id. ¶ 49.  In the spring of 2013, Keith terminated Farace and other long-time advisors and retained new attorneys and advisors, including attorneys selected by Wendy.  Id. ¶ 50.  The new attorneys requested that the Wellin children prepay the promissory note held by the Trust so that Keith could transfer the $25 million bequest to Wendy, as set out in the Trust, prior to his death.  Id. ¶ 51.  In the spring or summer of

---

[2] Two related cases pending before this court – Wellin v. Wellin ("Wellin I"), No. 2:13-cv-1831, and McDevitt v. Wellin, No. 2:13-cv-3595 – involve a different trust, the Wellin Family 2009 Irrevocable Trust.  That trust is not at issue in these motions.

2013, Keith transferred $4.5 million to Wendy, which she used to purchase a home in Sullivan's Island, South Carolina.  Id. ¶ 52.  Around the same time, he transferred $25 million to Wendy.  Id. ¶ 53.  The Wellin children allege that these transfers were the product of Wendy "manipulating, coercing or unduly influencing Keith."  Id. ¶ 54.  Also in the spring or summer of 2013, Keith failed to consummate the sale of a property in Friendship, Maine to Marjorie, even though he had previously expressed excitement about the sale.  Id. ¶ 55.  The property had sentimental value to Keith, the Wellin children, and their children.  Id.

In July 2013, Keith filed a lawsuit, Wellin I, against the Wellin children.  Id. ¶ 56. Around the same time, Keith revoked powers of attorney granted to Peter and Cynthia, removed Peter as successor trustee of the Trust, and removed Cynthia as backup successor trustee of the Trust.  Id. ¶ 57.  Keith installed Wendy into these positions.  Id. In the months following the initiation of litigation, Keith's new lawyers drafted one or more revised versions of the Trust that eliminate or significantly reduce Keith's bequests to the Wellin children and increase his bequests to Wendy and her children.  Id. ¶ 60.

The Wellin children allege that "Keith's uncharacteristic and bizarre behavior" was the result of "certain lies, fraudulent misrepresentations, undue influence, coercion, and isolation" by Wendy designed to interfere with the Wellin children's inheritance and enrich herself.  Id. ¶¶ 70-71.   The Wellin children allege that Wendy's actions to interfere with the relationship between Keith and his children include:  preventing the Wellin children from visiting Keith; refusing to answer calls from the Wellin children and failing to inform Keith when they called; insisting that she be present for all visits between Keith and the Wellin children; telling Keith and others lies about the Wellin

children; and initiating and controlling the litigation brought by Keith against the Wellin

children.  Id. ¶ 72.  The Wellin children further allege that Wendy has taken steps to

influence Keith with respect to his finances and estate planning, including:  "coaching"

Keith regarding what he should say to lawyers, health care providers, friends, and others

regarding the facts of the lawsuits;  meeting with Keith's lawyers outside his presence

and instructing them on Keith's intentions with respect to the litigation; disseminating

communications on behalf of Keith not consistent with his actual or expressed intentions;

coercing Keith to terminate Farace and other long-time advisors; coercing Keith to

change his will, the Trust, and other estate planning documents to provide more for

Wendy and less for the Wellin children; signing documents on Keith's behalf without his

informed consent; and making distributions from Keith's accounts over which she served

as Keith's power of attorney that were inconsistent with Keith's best interests.  Id. ¶ 74.

The Wellin children bring the following causes of action against Wendy

individually:  (1) defamation; (2) intentional interference with inheritance; (3) intentional

interference with prospective contractual relations/prospective economic advantage;

(4) breach of fiduciary duty; (5) breach of prenuptial agreement related to the Wellin

children's access to Keith; (6) breach of prenuptial agreement related to Wendy's control

of Keith's separate property; (7) breach of contract accompanied by a fraudulent act;

(8) constructive trust; (9) barratry; and (10) negligence per se.  The Wellin children also

seek a declaratory judgment against Wendy in her official capacity declaring that "all

purported amendments to the Revocable Trust after the Tenth Amendment to and

Restatement of the Revocable Trust, dated August 30, 2011 . . . were and are ineffective, invalid, ultra vires, and void."[3] Compl. ¶ 190.

On December 3, 2014, trustee Wendy filed a motion to dismiss, seeking to dismiss the Wellin children's claim for declaratory judgment. The Wellin children responded on January 12, 2015. On January 26, 2015, Wendy, in her individual capacity, filed a motion to dismiss, arguing that the court lacks jurisdiction over the claims asserted against her individually and that the court should abstain from exercising its jurisdiction. The Wellin children responded on January 30, 2015. Both motions have been fully briefed and are now ripe for the court's review.

## II.  DISCUSSION

The court first considers Wendy's motion in her official capacity and then considers her motion in her individual capacity.

### A.      Trustee Wendy's Motion to Dismiss

Trustee Wendy moves the court to dismiss the Wellin children's declaratory judgment claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7). The court will consider each argument in turn.

#### 1.      Rule 12(b)(1) and the Probate Exception

Under Rule 12(b)(1), a party may move to dismiss for "lack of subject-matter jurisdiction." Trustee Wendy contends that the court lacks subject-matter jurisdiction over the declaratory judgment claim because it falls within the probate exception to diversity jurisdiction under 28 U.S.C. § 1332(a). Trustee Wendy's Mot. 3.

---

[3] For the purposes of this motion, the court will refer to the Trust as it stood on August 30, 2011 as the "Original Trust." See Pls.' Resp. to Trustee Wendy's Mot. Ex. A. The court will refer to the version dated June 27, 2014 as the "Amended Trust." Id. Ex. B.

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976).  The probate exception, the origins of which are "obscure,"[4] <u>Oliver v. Hines</u>, 943 F. Supp. 2d 634, 636 (E.D. Va. 2013), is a well-established judicially-created exception to the exercise of otherwise proper federal jurisdiction.  <u>See Markham v. Allen</u>, 326 U.S. 490, 494 (1946).  <u>Markham</u>, the Supreme Court's "pathmaking pronouncement on the probate exception," <u>Marshall v. Marshall</u>, 547 U.S. 293, 308 (2006), held that

> a federal court has no jurisdiction to probate a will or administer an estate . . . .  But . . . federal courts of equity have jurisdiction to entertain suits in favor of creditors, legatees and heirs and other claimants against a decedent's estate to establish their claims so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.

326 U.S. at 494 (internal citations and quotation marks omitted).

In <u>Marshall</u>, the Supreme Court more sharply defined the probate exception, emphasizing that it is of "distinctly limited scope."  547 U.S. at 296.  The Court held that

> the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.  But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

<u>Id.</u> at 311-12.  In limiting the probate exception, the Court criticized the expansion of the probate exception by some federal courts "over a range of matters well beyond probate of

---

[4] Judge Posner has described the probate exception as "one of the most mysterious and esoteric branches of the law of federal jurisdiction." <u>Dragan v. Miller</u>, 679 F.2d 712, 713 (7th Cir. 1982); <u>see also</u> <u>Marshall v. Marshall</u>, 547 U.S. 2983, 299 (2006) (noting that the probate exception "stem[s] in large measure from misty understandings of English legal history").

a will or administration of a decedent's estate," such as breach of duty by an executor, breach of fiduciary duty by a trustee, and tortious interference with a plaintiff's expected inheritance.  Id. at 311.

Thus, after Marshall, the probate exception bars the exercise of federal jurisdiction over two types of claims:  (1) those seeking to probate or annul a will, or administer a decedent's estate; and (2) those seeking to dispose of property that is in the custody of the state probate courts.  Id. at 311-12; see also Curtis v. Brunsting, 704 F.3d 406, 409 (5th Cir. 2013); Oliver, 943 F. Supp. 2d at 637.  The court must determine whether the Wellin children's declaratory judgment claim falls within either of these categories.

### a.     Probate of a Will/Administration of an Estate

The first instance in which the probate exception applies is when a case in federal court seeks to probate a will or administer a decedent's estate.  Marshall, 547 U.S. at 311-12.  Prior to Marshall, there was a long-standing split of authority over whether the probate exception applied to inter vivos trusts.  Several courts, including this court, held that the probate exception did not apply to an inter vivos trust.  See, e.g., Sianis v. Jensen, 294 F.3d 994, 999 (8th Cir. 2002) ("Many, if not most, courts have held that the probate exception does not apply to actions involving trusts."); Beattie v. J.M. Tull Found., 941 F. Supp. 57, 59 (D.S.C. 1996) ("[S]imply because the trust was funded with estate assets and established by the terms of a will, the administration of the trust does not necessarily equal the administration of the estate."); Weingarten v. Warren, 753 F. Supp. 491, 494 (S.D.N.Y. 1990) ("The probate exception to diversity jurisdiction does not apply to trusts.").  On the other hand, prior to Marshall, a number of courts held that an inter vivos

7

trust often functions as a will-substitute and is therefore subject to the probate exception. See, e.g., Evans v. Pearson Enters., Inc., 434 F.3d 839, 849 (6th Cir. 2006) ("Refusing to hear cases regarding will substitutes is consistent with Markham because adjudication concerning will substitutes would frequently interfere with probate administration."); In re Marshall, 392 F.3d 1118, 1135 (9th Cir. 2004) (holding that a plaintiff "cannot avoid the probate exception simply by stating that the trust which she claims was to be created for her benefit was an inter vivos trust"); Georges v. Glick, 856 F.2d 971, 974 n.2 (7th Cir. 1988) ("The plaintiffs argue that the probate exception is inapplicable here because this action relates to the execution of an inter vivos trust, not to a will.  We reject such a per se rule. The inter vivos trust is clearly a will substitute.").

Following Marshall, however, it is clear that the probate exception does not apply to cases involving an inver vivos trust because those cases do not seek to probate a will or administer an estate.  See Lee Graham Shopping Ctr., LLC v. Estate of Kirsch, --- F.3d ----, 2015 WL 409643, at *2 (4th Cir. Feb. 2, 2015) (declining to apply probate exception to case involving a trust); Curtis, 704 F.3d at 409-10 (same); Oliver, 943 F. Supp. 2d at 638-39 (same).  Although an inter vivos trust "may, on occasion, serve as the functional equivalent of a will, the application of the probate exception to such trusts would mark and unwarranted expansion of the exception."  Oliver, 943 F. Supp. 2d at 638. Furthermore, "the argument that a trust is the functional equivalent of a will for jurisdictional purposes loses considerable force where . . . the decedent had a successfully probated will in addition to an inter vivos trust."  Id. at 639 n.17.  In this case, Keith has a pour-over will, which Wendy has submitted to the probate court.

Trustee Wendy argues that "[n]umerous cases, both before and after the Supreme Court's decision in <u>Marshall</u>, have found that the probate exception can and does apply to trusts." Trustee Wendy's Mot. 5. However, only one of the cases she cites was decided after <u>Marshall</u> – an unreported decision from an Idaho District Court. <u>See</u> <u>Chabot v. Chabot</u>, 2011 WL 5520927 (D. Idaho Nov. 14, 2011). Moreover, in <u>Chabot</u>, the court inexplicably "rephrased" the questions posed by <u>Marshall</u> "to reflect the use of the trust: (1) Are plaintiffs asking the Court to determine the validity of a trust, or to administer the trust? or (2) Are plaintiffs asking this Court to dispose of trust assets?" 2011 WL 5520927, at * 5. This "rephrasing" is directly at odds with the Supreme Court's criticism of courts expanding the probate exception to "matters well beyond the probate of a will or administration of a decedent's estate." <u>Marshall</u>, 547 U.S. at 311-313. Regardless, the Fourth Circuit's recent decision in <u>Lee Graham</u> forecloses Wendy's argument.

The Wellin children's declaratory judgment claim does not trigger the probate exception by seeking to probate Keith's will or administer his estate.

### b.    Property in Custody of State Probate Court

The probate exception also "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." <u>Marshall</u>, 547 U.S. at 311. This "is a reiteration of the general principle that, when one court is exercising <u>in rem</u> jurisdiction over a <u>res</u>, a second court will not assume <u>in rem</u> jurisdiction over the same <u>res</u>." <u>Id.</u> The resolution of this issue "requires a two-step inquiry into (1) whether the property in dispute is estate property within the custody of the probate court and (2) whether the plaintiff's claims would require the federal court to assume <u>in rem</u> jurisdiction over that property." <u>Curtis</u>, 704 F.3d at 409. "If the answer to both inquiries

9

is yes, then the probate exception precludes the federal district court from exercising diversity jurisdiction." Id.

Three other courts to consider this issue, including the Fourth Circuit, have soundly rejected the notion that property in an inter vivos trust is within the custody of a probate court. As the Fifth Circuit explained in Curtis,

> because the assets in a living or inter vivos trust are not property of the estate at the time of the decedent's death, having been transferred to the trust years before, the trust is not in the custody of the probate court and as such the probate exception is inapplicable to disputes concerning the administration of the trust.[5]

704 F.3d at 410; see also Lee Graham, 2015 WL 409643, at *2 ("Further, the Interest at issue is currently held by the Cullen Trust, and thus is not property in the custody of the Maryland probate court."); Oliver, 943 F. Supp. 2d at 638 (citing Curtis and holding that a suit to invalidate an inter vivos trust does not require a federal court to assume in rem jurisdiction over property subject to the jurisdiction of a state probate court). The same analysis applies here.

As an initial matter, the South Carolina Probate Code defines "probate estate" as "the decedent's property passing under the decedent's will plus the decedent's property passing by intestacy, reduced by funeral and administration expenses and enforceable claims." S.C. Code Ann. § 62-2-202. This definition does not encompass assets in an inter vivos trust.

Trustee Wendy argues that various sections of the South Carolina Probate Code prevent this court from exercising jurisdiction over the trust. First, she cites S.C. Code Ann. § 62-1-302(a)(3), which grants the probate court "exclusive original jurisdiction

---

[5] Notably, in Curtis, as in this case, probate proceedings were ongoing at the time the Fifth Circuit considered the case and on remand to the district court. 704 F.3d at 409.

over all subject matter related to . . . trusts, <u>inter vivos</u> or testamentary." Similarly, S.C. Code Ann. § 62-7-201(a) grants the probate court exclusive jurisdiction over proceedings initiated by interested parties concerning the internal affairs of trusts.[6] Next, trustee Wendy points to S.C. Code Ann. § 62-7-505, which provides:

> After the death of a settlor, and subject to the settlor's right to direct the source from which liabilities will be paid, and except to the extent state or federal law exempts any property of the trust from claims, costs, expenses, or allowances, the property held in a revocable trust at the time of the settlor's death is subject to claims of the settlor's creditors, costs of administration of the settlor's estate, the expenses of the settlor's funeral and disposal of remains, and statutory allowances to a surviving spouse and children to the extent the settlor's probate estate is inadequate to satisfy those claims, costs, expenses, and allowances . . . .

Finally, trustee Wendy notes that S.C. Code Ann. § 62-2-202(b) allows assets of a revocable trust that is deemed to be illusory to be included as part of the probate estate for the purpose of calculating a spouse's elective share.

Trustee Wendy argues that pursuant to these sections of the South Carolina Probate Code, the probate court "necessarily exercises continuing <u>in rem</u> jurisdiction over a formerly revocable <u>inter vivos</u> trust which was funded during the Settlor's lifetime." Trustee Wendy's Mot. 6. This argument is without merit. As noted by the Wellin children, the fact that the probate court <u>may</u> exercise jurisdiction over a trust in certain circumstances and presumably <u>could</u> concurrently assume custody of a trust's assets if necessary does not mean that the probate court <u>has</u> done so here. Trustee Wendy has not presented any evidence indicating that the probate court has custody of the assets of the

---

[6] To the extent trustee Wendy argues that §§ 62-1-302(a)(3) and 62-7-201 divest this court of jurisdiction by granting the probate court exclusive jurisdiction, her argument fails. The jurisdiction of the federal courts, "having existed from the beginning of the Federal government, [can]not be impaired by subsequent state legislation creating courts of probate." <u>Marshall</u>, 547 U.S. at 314 (citing <u>McClellan v. Carland</u>, 217 U.S. 268, 281 (1910)).

Trust.[7]  See Curtis, 704 F.3d at 409 ("[N]othing suggests that the . . . probate court

currently has custody or in rem jurisdiction over the Trust.  It likely does not.").

Moreover, even assuming the probate court has custody of the Trust assests, the Wellin

children's claim for declaratory judgment does not "endeavor[] to dispose of" such

property.  Marshall, 547 U.S. at 311.  Rather, they seek a declaratory judgment regarding

the validity of certain amendments to the Trust.

Because the Wellin children's claim for declaratory relief against trustee Wendy

neither seeks to administer an estate nor dispose of property in custody of the probate

court, the probate exception does not divest this court of jurisdiction to adjudicate the

claim.

### 2.  Rule 12(b)(7) and Required Parties

Under Rule 12(b)(7), a party may move to dismiss for "failure to join a party

under Rule 19."  Wendy contends that the Wellin children failed to join the other

beneficiaries of the Trust, warranting dismissal under Rule 19.  Trustee Wendy's Mot.

12.

Federal Rule of Civil Procedure 19(a) sets forth a two-step inquiry for courts to

determine whether a party is "necessary" and "indispensable."[8]  Home Buyers Warranty

---

[7] Wendy argues that Keith's estate would be insolvent were the assets of the Trust not available to pay his debts and expenses of administration, Trustee Wendy's Mot. 9, but does not provide any evidence that this is the case.  Regardless, even assuming that Keith's estate cannot pay his debts without the Trust's assets, there is still no indication that the probate court actually has custody over the Trust at this time.

[8] Rule 19 was amended in 2007 for stylistic purposes only.  See Republic of Phil. v. Pimentel, 553 U.S. 851, 855-56 (2008).  Previously, Rule 19(a) considered whether a party was "necessary" and Rule 19(b) addressed whether a necessary party was, in addition, "indispensable."  While the current version of Rule 19 speaks only of "required" parties, the Fourth Circuit has continued to frame the inquiry using the language of pre-amendment Rule 19.

Corp. v. Hanna, 750 F.3d 427, 433 (4th Cir. 2014). The first question under Rule 19(a) is "whether a party is necessary to a proceeding because of its relationship to the matter under consideration." Id. (citing Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915, 917 (4th Cir. 1999)). If a party is necessary, it will be ordered into the action. Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir. 1999). "Second, if the party is necessary but joining it to the action would destroy complete diversity, the court must decide under Rule 19(b) 'whether the proceeding can continue in that party's absence.'" Hanna, 750 F.3d at 433 (quoting Teamsters, 173 F.3d at 917).

Rule 19 is not to be applied as a "procedural formula." Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 120 n.16 (1968). Rather, decisions "whether to dismiss must be made pragmatically, in the context of the 'substance' of each case." Id. "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." Owens-Illinois, 186 F.3d at 441; see also Hanna, 750 F.3d at 433 ("While the dismissal of a case is a drastic remedy [that] should be employed only sparingly, it is required if a non-joined party to the dispute is both necessary and indispensable." (citation and internal quotation marks omitted)). The burden is on the party raising the defense to make the required showing under Rule 19, Am. Gen. Life & Acc. Ins. Co. v. Wood, 429 F.3d 83, 92 (4th Cir. 2005), and the Rule 19 inquiry is left to the sound discretion of the court. Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of S.C., Inc., 210 F.3d 246, 250 (4th Cir. 2000) (citing Coastal Modular Corp. v. Laminators, Inc., 635 F.2d 1102, 1108 (4th Cir. 1980)).

13

At the first step of the inquiry, trustee Wendy argues that the Trust's other beneficiaries[9] are necessary parties who should be joined if feasible under Rule 19(a). Trustee Wendy's Mot. 12. To be necessary parties, the absent beneficiaries must "claim[] an interest relating to the subject of the action and [be] so situated that disposing of the action in [their] absence may" either: (1) "as a practical matter impair or impede [their] ability to protect [their] interest[s]"; or (2) leave trustee Wendy "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of [their] interest[s]."[10] Fed. R. Civ. P. 19(a)(1)(B)(i), (ii). The court first analyzes whether the absent beneficiaries have claimed an interest in the action before determining whether they fall within either prong of Rule 19(a)(1)(B).

### a.    Claim of Interest

The court first must determine if the absent beneficiaries have actually claimed an interest relating to the subject of this action. Courts have held that application of Rule 19(a)(1)(B) is contingent on the absent party actually claiming an interest in the subject matter of the suit. United States v. Bowen, 172 F.3d 682, 689 (9th Cir. 1999) (holding that absent party was not a required party because it was aware of the action and chose not to claim an interest); Harvill v. Harvill, 2013 WL 1245729, at *4 (M.D. Tenn. Mar. 27, 2013) (noting that courts "have . . . routinely held that in order for a party to be

---

[9] The beneficiaries of the Trust are: (1) Wendy, (2) Cynthia, (3) Marjorie, (4) Hamilton College, (5) Raul Rios, (6) Mary Martinez, (7) Celia Sally Simpson, (8) Filemeno Guerra, (9) Louise Reed, (10) Barbara Nystrom, (11) Tammy Barter, (12) Alma and Jerry Johnson, (13) Margaret Stripling, (14) Helen Harris, (15) Maria Consolo, (16) Denise Beliard, and (17) Coastal Community Foundation of South Carolina, Inc. Trustee Wendy's Mot. Ex. E.

[10] Trustee Wendy does not argue that the absence of the beneficiaries prevents the court from according complete relief among the existing parties. See Fed. R. Civ. P. 19(a)(1)(A)

14

necessary, she must first 'actually claim' an interest in the subject matter of the suit" and holding that Rule 19(a) "appears to demand more than a finding that the absent party may have an interest, but instead affirmatively requires that the absent party <u>claim</u> the interest" (emphasis in original)); <u>see also</u> <u>Wood</u>, 429 F.3d at 93 (affirming district court's determination that because absent party "had not claimed an interest in the federal action," joinder was not required under Rule 19(a)).

Here, trustee Wendy has provided no indication that the absent beneficiaries have actually claimed any interest in this action. Instead, she merely lists the names of the beneficiaries in an exhibit to her motion. The absent beneficiaries' failure to actually claim an interest is sufficient grounds to deny Wendy's motion under Rule 19. However, out of an abundance of caution, the court continues to consider whether the absent beneficiaries are necessary parties under either prong of Rule 19(a)(1)(B).

### b.     Impair or Impede Absent Parties' Interests

Under Rule 19(a)(1)(B)(i), absent parties with an interest in the action must be joined if disposing of the action without them would "impair or impede" their ability to protect their interest. However, absent parties are not necessary under Rule 19(a)(1)(B)(i) if their interests are adequately represented by the existing parties. <u>Ohio Valley Envtl. Coal. v. Bulen</u>, 429 F.3d 493, 505 (4th Cir. 2005) (affirming district court's determination that joinder was not required because the interests were identical to the interests of the absent parties and that the former would therefore adequately represent the interests of the latter); <u>Bacardi Int'l Ltd. v. V. Suarez & Co.</u>, 719 F.3d 1, 12 (1st Cir. 2013) ("Where an existing party has 'vigorously addressed' the interests of absent parties, we have no need to protect a possible required party from a threat of serious

15

injury."); <u>Salt River Project Agr. Imp. & Power Dist. v. Lee</u>, 672 F.3d 1176, 1180 (9th Cir. 2012) ("An absent party with an interest in the action is not a necessary party under Rule 19(a) if the absent party is adequately represented in the suit." (citation and internal quotation marks omitted)).

  Trustee Wendy cites the Supreme Court's decision in <u>Carey v. Brown</u>, which held that "[t]he general rule is, that in suits respecting trust-property, brought either by or against the trustees, the <u>cestuis que trust</u>[11] as well as the trustees are necessary parties." 92 U.S. 171, 172 (1875). However, the <u>Carey</u> court next noted that "to this rule there are several exceptions," <u>id.</u>, and courts have recognized that the general rule in <u>Carey</u> "is not a strict rule." <u>Brown-Thill v. Brown</u>, 929 F. Supp. 2d 887, 898 (W.D. Mo. 2013); <u>see also</u> W.W. Allen, <u>Trust Beneficiaries as Necessary Parties to Action Relating to Trust or its Property</u>, 9 A.L.R. 2d 10 (1950) (noting that the general rule "is honored more in the exception than in the application" and that "[o]ne may even find authority to the effect that the rule is in large part the direct opposite of that stated above"). Indeed, many courts have held that trust beneficiaries are not required parties to actions involving a trust where their interests are adequately represented by the trustee or other beneficiaries. <u>See, e.g.</u>, <u>Markham v. Fay</u>, 74 F.3d 1347, 1355 (1st Cir. 1996) (holding that beneficiaries of trust were not necessary parties to action seeking to recover trust property because the interest of the trustee, who was also a beneficiary, was at least as strong as that of the other beneficiaries); <u>Harvill</u>, 2013 WL 1245729, at *4.

---

[11] "<u>Cestui que trust</u>" is an alternative name for a beneficiary. <u>Black's Law Dictionary</u> (9th ed. 2009)

Harvill is particularly instructive as it involves a nearly identical situation.  There, the plaintiff was a beneficiary of a trust settled by her mother.  Harvill, 2013 WL 1245729, at *1.  The plaintiff alleged that while her mother was in a vegetative state, her mother's husband, who held power of attorney for his wife, amended the trust to disinherit the plaintiff in favor of the plaintiff's estranged husband.  Id.  The plaintiff sued her mother's widower and a bank that served as trustee of the trust, alleging that the trust amendment was invalid.  Id.  The widower moved to dismiss the complaint on the basis that the plaintiff failed to join her estranged husband, the beneficiary of the trust under the amendment, and that the plaintiff's primary cause of action would divest him as beneficiary and could leave him open to inconsistent judgments.  Id. at *2-*3.

The court, noting that the case centered on whether the amendment to the trust was invalid, held that the estranged husband's participation was not necessary because his claim would be adequately defended by both of the existing defendants.  Id. at *4. The court held that it would be able to make a determination regarding the amendment's validity in the absence of the beneficiary and denied the motion to dismiss pursuant to Rule 19.  Id.

Similarly, the interests of any absent beneficiaries in this case will be adequately represented.  Those who stand to lose if the Amended Trust is invalidated are adequately represented by Wendy as the trustee and a beneficiary of the Trust.  For the same reasons that Wendy will adequately represent the interests of absent beneficiaries who may have any interest in preserving the Amended Trust, the Wellin children will adequately

represent the interest of any absent beneficiaries who stand to gain from a declaration declaring the amendments to the Trust invalid.[12]

There are only two potential outcomes with respect to the Wellin children's declaratory judgment claim – one of two competing versions of the Trust will prevail. The Wellin children and Wendy adequately represent the positions in support of both outcomes. Therefore, he absent beneficiaries are not necessary parties under Rule 19(a)(1)(B)(i).

### c.    Inconsistent Obligations

Under Rule 19(a)(1)(B)(ii), absent parties with an interest in the action must be joined if disposing of the action without them would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of [their] interest[s]." The mere possibility that an existing party may incur inconsistent obligations is insufficient to trigger Rule 19(a)(1)(B)(ii). Coastal Modular Corp. v. Laminators, Inc., 635 F.2d 1102, 1108 (4th Cir. 1980) ("The trial court justifiably found, however, that [the defendant] could only theorize the possibility that [a third party] would institute suit against it. Nothing before the court suggested a substantial likelihood of such a suit."); In re Torcise, 116 F.3d 860, 866-67 (11th Cir. 1997) (holding that claims of multiple exposure that are "purely speculative" do not arise to a substantial risk of inconsistent obligations); Buquer v. City of Indianapolis, 2012 WL 76141, at *4 (S.D. Ind. Jan. 9, 2012) ("We are more than a bit dismayed by the gaping assumptions implicit in [the defendants'] argument [that an absent third party may bring

---

[12] As the Wellin children note, several absent beneficiaries would not have any interest in this action because they would receive the same amount under the Original Trust as under the Amended Trust. Compare Pls.' Resp. to Trustee Wendy's Mot. Ex. A, with id. Ex. B.

18

litigation in the future].");  Ohio Valley Envtl. Coal., Inc. v. Maple Coal Co., 808 F.

Supp. 2d 868, 889 (S.D. W. Va. 2011) (noting that "[f]or there to be conflicting

obligations there necessarily must be multiple orders," and holding that because nothing

had yet happened in another action, "the possibility of conflicting obligations is merely

speculative"); F.D.I.C. v. Bank of N.Y., 479 F. Supp. 2d 1, 12 (D.D.C. 2007) ("In order

to qualify as a necessary party under Rule 19(a), the possibility of being subject to

multiple or inconsistent obligations must be real, and not a mere possibility.").

     Trustee Wendy argues that if the Wellin children prevail, "the beneficiaries, not

being bound by res judicata, could <u>theoretically</u> succeed in later litigation against

[Wendy] to enforce the terms of the post-August 11, 2011 amendments."  Trustee

Wendy's Mot. 12 (emphasis added).   The "theoretical[]" possibility of a lawsuit is

insufficient to show a "substantial risk" of inconsistent obligations as required by Rule

19(a)(1)(B)(ii).

     The court rejects trustee Wendy's contention that the Wellin children have failed

to join required parties under Rule 19.  First, the absent beneficiaries have not actually

claimed interests in this action.  Moreover, to the extent the absent beneficiaries do have

interests in this litigation, trustee Wendy has not shown that those interests would be

impeded or that she would face a substantial risk of inconsistent obligations without

joining the absent beneficiaries.[13]

---

[13] Because Wendy has not shown that the absent beneficiaries are necessary parties under Rule 19(a), the court need not consider whether they are indispensable parties under Rule 19(b).  However, even if the court the court were to assume that the absent beneficiaries are necessary, there is no reason to believe they are indispensable under Rule 19(b).

Because neither the probate exception nor Rule 19 apply to the Wellin children's declaratory judgment claim, the court denies trustee Wendy's motion to dismiss.

**B.      Wendy's Motion to Dismiss**

Wendy, in her individual capacity, moves the court to dismiss the Wellin children's claims pursuant to Rule 12(b)(1) and <u>Colorado River</u> abstention.  The court will consider each argument in turn.

### 1.      Rule 12(b)(1) and the Probate Exception

Wendy, echoing the arguments made in her capacity as a trustee, argues that the probate exception divests this court of jurisdiction to hear the Wellin children's claims against her in her individual capacity.  This analysis largely tracks the discussion above. Therefore, the court incorporates its earlier discussion and only analyzes issues arising from differences between the claims brought against Wendy in her two capacities.

#### a.      Probate of a Will/Administration of an Estate

As discussed above, the first instance in which the probate exception applies is when a case in federal court seeks to probate a will or administer a decedent's estate. <u>Marshall</u>, 547 U.S. at 311-12.

As noted by the Wellin children, their claims against Wendy fall primarily into two categories.  First, they seek an <u>in personam</u> judgment for damages against Wendy for various torts and breaches of contract.  Second, they seek to impose a constructive trust over the assets of the Trust and over certain transfers made from Keith to Wendy.

The <u>in personam</u> claims against Wendy do not fall within the probate exception. Most of these claims – including defamation, intentional interference with prospective contractual relations, breach of fiduciary duty, breach of prenuptial agreement, barratry,

and negligence <u>per se</u> – are clearly not seeking to probate a will or administer a decedent's estate. The remaining <u>in personam</u> claim against Wendy is for intentional interference with inheritance – the very same tort at issue in <u>Marshall</u>. In <u>Marshall</u>, the plaintiff asserted that her late husband's son had "tortuously interfered with a gift she expected." 547 U.S. at 300-01. The court, in finding that the probate exception was not applicable, noted that the plaintiff was "seek[ing] an <u>in personam</u> judgment" pursuant to a "widely recognized tort," "not the probate or annulment of a will." <u>Id.</u> at 312. Here, the Wellin children are likewise seeking an <u>in personam</u> judgment against Wendy for the same tort. The fact that their damages may be measured, in part, by the amount of the inheritance they would have received but for Wendy's interference does not convert their tort claims into an action to probate a will or administer an estate.

The Wellin children also seek the imposition of a constructive trust over the assets of the Trust and over certain transfers Keith made to Wendy. As the Wellin children point out, they do not seek to impose a constructive trust over any assets in Keith's probate estate. The transfers Keith made to Wendy during his lifetime are clearly not estate property. Additionally, as discussed at length above, the probate exception does not apply to <u>inter vivos</u> trusts, even when they serve as the functional equivalent of a will.

The Wellin children's claims against Wendy no not ask the court to probate Keith's will or to administer his estate.

### b.        Property in Custody of State Probate Court

The probate exception also "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." <u>Marshall</u>, 547 U.S. at 311.

With respect to the Wellin children's <u>in personam</u> claims, any damages will be recoverable from Wendy herself, not from property in custody of the probate court. With regard to the constructive trust claim, there is no indication that the transfers Keith made to Wendy or, as dicussed above, the assets of the Trust are in the custody of the probate court.[14]

Because the Wellin children's claims against Wendy neither seek to administer an estate nor dispose of property in custody of the probate court, the probate exception does not divest this court of jurisdiction to adjudicate those claims.

### 2.    <u>Colorado River</u> Abstention

Wendy argues that even if the probate exception does not divest the court of jurisdiction, the court should nonetheless abstain from exercising jurisdiction pursuant to <u>Colorado River</u> abstention. Wendy's Mot. 7.

As a general rule, "our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." <u>Vulcan Chem. Techs., Inc. v. Barker</u>, 297 F.3d 332, 340 (4th Cir. 2002). "Despite what may appear to result in a duplication of judicial resources, '[t]he rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" <u>McLaughlin v. United Va. Bank</u>, 955 F.2d 930, 934 (4th Cir. 1992) (quoting <u>McClellan v. Carland</u>, 217 U.S. 268, 282 (1910)). Indeed, as discussed above, federal courts have a "virtually unflagging

---

[14] The Wellin children also request a constructive trust over "testamentary bequests that [Wendy] would not have received." Compl. ¶ 168. It is not clear whether these bequests have already been made or whether the property is in the probate estate. To the extent that the property is in the probate estate, this part of the constructive trust claim is barred by the probate exception.

obligation . . . to exercise the jurisdiction given them." <u>Colo. River</u>, 424 U.S. at 817.

However, under principles established in <u>Colorado River</u>, a federal court "may abstain

from exercising [its] jurisdiction in the exceptional circumstances where a federal case

duplicates contemporaneous state proceedings and '[w]ise judicial administration, giving

regard to conservation of judicial resources and comprehensive disposition of litigation'

clearly favors abstention." <u>Vulcan</u>, 297 F.3d 332, 340-41 (4th Cir. 2002) (quoting

<u>Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.</u>, 342 U.S. 180, 183 (1952)).

     For a federal court to abstain under the <u>Colorado River</u> doctrine, two conditions

must be satisfied. The threshold question is "whether there are parallel federal and state

suits." <u>Great Am. Ins. Co. v. Gross</u>, 468 F.3d 199, 207 (4th Cir. 2006). Second,

"exceptional circumstances" warranting abstention must exist. <u>Colo. River</u>, 424 U.S.

800, 813 (1976). Without establishing a rigid test, the Supreme Court has recognized

several factors that are relevant to determining whether a particular case presents

exceptional circumstances. <u>Gannett Co. v. Clark Const. Grp., Inc.</u>, 286 F.3d 737, 741

(4th Cir. 2002). A district court's decision whether to abstain under <u>Colorado River</u> is

reviewed for abuse of discretion. <u>Gannett</u>, 286 F.3d at 741.

     The court will first consider whether there are parallel suits in federal and state

court and, if so, whether the factors laid out by the Supreme Court favor abstaining or

exercising jurisdiction.

### a.     Parallel Suits

     Wendy glosses over this initial issue, simply stating that the Wellin children have

admitted that parallel suits exist here. Wendy's Mot. 8. However, the Wellin children

contest this issue in their response, arguing that this action and the action pending in state court are not parallel.  Pls.' Resp. to Wendy's Mot. 11.

Suits are considered parallel "if substantially the same parties litigate substantially the same issues in different forums."  Gannett, 286 F.3d at 742 (citation omitted).  If actions involve different issues, remedies, or proof requirements, they are not parallel for the purposes of Colorado River abstention.  Id. at 742-43.  Even if two proceedings have "certain facts and arguments in common," they are not parallel unless the legal issues are "substantially the same."  Al-Abood v. El-Shamari, 217 F.3d 225, 233 (4th Cir. 2000); see also McLaughlin, 955 F.2d at 935 ("In addition to party differences, it would appear that a breach of contract claim pending in the federal case is not pending, nor has it ever been pending, in any state court proceeding.  It cannot be said therefore that parallel duplicative proceedings exist in state court so as to present a Colorado River issue."); Red Bone Alley Foods, LLC v. Nat'l Food & Beverage, Inc., No. 4:13-cv-3590, 2014 WL 1093052, at *8 (D.S.C. Mar. 14, 2014) (holding that proceedings were not parallel, despite the common identity of the parties and the common issues of fact, because the claims alleged and remedies sought were not the same).

In this case, the Wellin children seek an in personam judgment against Wendy for damages arising out of claims for defamation, intentional interference with prospective contractual relations, breach of fiduciary duty, breach of prenuptial agreement, barratry, and negligence per se.  They also seek declaratory and equitable relief in connection with the Trust.  In contrast, the Wellin children's claims in the state court action do not seek any of this relief.  See generally Wendy's Mot. Ex. 6.  Rather, all of the Wellin children's defenses and causes of action in the state court action relate to Keith's will.  Id.  Even

Wendy admits that the counterclaims asserted in the state court action "contest[] the will."  Wendy's Mot. 2.  Although there are clearly common factual questions between the two actions and a substantial overlap of parties, the Wellin children's suit in this court involves entirely different claims and requests for relief.[15]

Because the two actions are not parallel, <u>Colorado River</u> abstention does not apply.  Although the court is not required to examine the abstention factors if it determines that the suits are not parallel, <u>Al-Abood</u>, 217 F.3d at 233, it will nonetheless briefly discuss them.

### b.     Exceptional Circumstances

If parallel suits exist, the court must carefully balance six factors to determine if exceptional circumstances exist:  (1) whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.  <u>Vulcan</u>, 297 F.3d at 341.  "No one factor is necessarily determinative," <u>Colo. River</u>, 424 U.S. at 818, and the court's decision must not "rest on a mechanical

---

[15] The fact that the Wellin children have moved to stay the state court action on the basis that the two actions share common factual issues, Wendy's Mot. Ex. 2, is not determinative of whether the actions are parallel.  As noted by the Wellin children, an adjudication of the state court action relating to Keith's will would not dispose of this case.  Pls.' Resp. to Wendy's Mot. 15.  "[I]f there is any substantial doubt that the concurrent state proceeding will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, a stay would be a serious abuse of discretion."  <u>Huon v. Johnson & Bell, Ltd.</u>, 657 F.3d 641, 646 (7th Cir. 2011) (citations and internal quotation marks omitted).

25

checklist."  Gannett, 286 F.3d at 744 (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983)).  The court must carefully balance the factors "with the balance heavily weighted in favor of the exercise of jurisdiction."  Moses H. Cone, 460 U.S. at 16.

    The first factor – whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others – weighs against abstention.  As discussed above, although probate courts can in certain circumstances assume jurisdiction of inter vivos trusts, there is no indication that the property in the Trust is in the custody of the probate court here.  The second factor, relating to the federal forum being inconvenient, is neutral here since Wendy resides in Charleston.  The desire to avoid piecemeal litigation weighs in favor of retaining jurisdiction, since two related cases –Wellin I and McDevitt – are currently pending before this court.  These same parties have engaged in discovery in those cases and the parties have indicated a willingness to consolidate this action with those cases for discovery.

    In considering the fourth factor – the order in which the courts obtained jurisdiction and the progress achieved in each action – the Supreme Court has emphasized that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone, 460 U.S. at 3.  While the state court action was filed before this action, there is no indication that the state court action has progressed any further than this case. Under the fifth factor the court must consider whether state law or federal law provides the rule of decision on the merits.  However, the presence of state law can be used only in "rare circumstances" to justify Colorado River abstention.  Gannett, 286 F.3d at 746.

Here this factor weighs slightly against abstention since both South Carolina law and Florida law are at issue.  The last factor is neutral because there is no indication that the Wellin children could not advance the same claims advanced here in state court.

Even if the court assumes that this case and the state court action are parallel, the factors laid out above, which are to be heavily weighted in favor of exercising jurisdiction, do not reveal anywhere near the exceptional circumstances required to abstain from jurisdiction under the <u>Colorado River</u> doctrine.

Because neither the probate exception nor <u>Colorado River</u> abstention apply to the Wellin children's claims against Wendy in her individual capacity, the court denies Wendy's motion to dismiss.

### III.   CONCLUSION

Based on the foregoing, the court **DENIES** both of defendants' motions to dismiss.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 12, 2014**
**Charleston, South Carolina**