# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| WENDY WELLIN, *as the Special Administrator of the Estate of Keith S. Wellin and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2001*, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 2:13-cv-1831-DCN |
| vs. | ) ) | |
| PETER J. WELLIN, *et. al.,* | ) ) | |
| Defendants. | ) | |
| LARRY S. McDEVITT, *as Trustee of the Wellin Family 2009 Irrevocable Trust*, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:13-cv-3595-DCN |
| vs. | ) ) | |
| PETER J. WELLIN, *et. al.*, | ) ) | |
| Defendants. | ) | |
| PETER J. WELLIN, *et. al.*, | ) ) | |
| Plaintiffs, | ) ) | No. 2:13-cv-4067-DCN |
| vs. | ) ) | |
| WENDY WELLIN, *individually and as Trustee of the Keith S. Wellin Florida Revocable Living Trust u/a/d December 11, 2011*, | ) ) ) ) | **ORDER** |
| Defendant. | ) | |

These matters are before the court on an Amended Report and

Recommendation ("R&R") by Special Master William L. Howard regarding the

following non-dispositive discovery motions ("the Motions") in Wellin v. Wellin, et.

1

al. ("Wellin I"), No. 2:13-cv-01831-DCN and McDevitt v. Wellin, et. al. ("McDevitt"), No. 2:13-cv-03595-DCN:

1. Plaintiff McDevitt's motion to compel discovery, deem matters addressed by requests for admissions to be admitted, and determine the sufficiency of answers to requests for admissions, filed May 7, 2014 in McDevitt, ECF No. 83 ("McDevitt Motion to Compel I");

2. Plaintiff McDevitt's motion to compel, filed November 7, 2014 in McDevitt, ECF No. 183 ("McDevitt Motion to Compel II");

3. Plaintiff Wendy Wellin's motion to compel discovery, filed November 26, 2014 in Wellin I, ECF No. 234 ("Wendy Motion to Compel");

4. Interested Party Wendy Wellin's motion to quash subpoenas, or, in the alternative for a protective order, filed December 15, 2014 in Wellin I, ECF No. 250 and McDevitt, ECF No. 223 ("Wendy Motion for Protective Order I");

5. Peter J. Wellin, Cynthia Wellin Plum, Marjorie Wellin King, and Friendship Management LLC's ("the Wellin Children") motion for a protective order, filed March 12, 2015 in Wellin I, ECF No. 276 ("Wellin Children's Motion for Protective Order"); and

6. Wendy Wellin's motion to quash subpoenas, or, in the alternative for a protective order, filed March 19, 2015 in Wellin I, ECF No. 277 ("Wendy Motion for Protective Order II").

The Wellin Children and Wendy Wellin ("Wendy") filed objections to the R&R. For the reasons that follow, the court adopts the R&R with modifications, and grants in part and denies in part the above-listed motions in accordance with the recommendations of the R&R, except that the relevant time period allowed for discovery of Keith Wellin's ("Keith"), Keith's estate's, and the Revocable Trust's financial records shall be extended from December 31, 2013 until trial.

## I.  BACKGROUND

Because the parties are well-acquainted with these cases, the court will dispense with a recitation of the facts and include only a procedural history of the

matters at hand.  Wellin I, McDevitt, and Wellin, et. al. v. Wellin ("Wellin II"), No. 2:13-cv-4067-DCN have been consolidated for the purposes of pretrial discovery. Wellin I, ECF No. 271.  On February 17, 2015, this court appointed William L. Howard to serve as special master over all non-dispositive, pre-trial matters and motions in these cases, including those pending before this court at the time.  Wellin I, ECF No. 270.  The special master heard the Motions on April 21, 2015 and issued the present R&R, recommending that the court grant the Motions in part and deny the Motions in part, on July 31, 2015.  R&R at 65–69.

On August 4, 2015, the Wellin Children filed an objection to the R&R ("Wellin Children Objection"), arguing that they should be able to discover the financial records of Keith, his estate, and the Keith S. Wellin Florida Revocable Living Trust (the "Revocable Trust") from December 31, 2013 until trial.  The same day, Wendy filed an objection to the R&R ("Wendy Objection") asking the court to permit redaction of the specific vendors' names and locations listed in the financial records that the Wellin Children subpoenaed from American Express.  On August 25, 2015, the Wellin Children filed a reply to Wendy's objection ("Wellin Children Reply"), and Wendy filed two replies to the Wellin Children's objection, one in her capacity as plaintiff in Wellin I ("Plaintiff Wendy Reply"), and another in her capacity as an interested party ("Interested Party Wendy Reply").

## II.   STANDARDS

In reviewing a special master's order, report, or recommendation, the court may "adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions."  Fed. R. Civ. P. 53(f)(1).  The court is required to review all

objections to any findings of fact or conclusions of law made or recommended by a special master *de novo*. Fed. R. Civ. P. 53(f)(3), (4); Wellin I, ECF No. 270. However, the special master's rulings on procedural matters will only be set aside for abuse of discretion. Fed. R. Civ. P. 53(f)(5); Wellin I, ECF No. 270, 6.

The Federal Rules of Civil Procedure provide that a party may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons who know of any discoverable matters." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding or limiting the scope of discovery. Fed. R. Civ. P. 26(c)(1). "The scope and conduct of discovery are within the sound discretion of the district court." Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Research, Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

### III.  DISCUSSION

#### A.  Wellin Children's Objection to the R&R

The Wellin Children argue that the R&R improperly restricts the period of time for which the Wellin Children may discover Keith's, his estate's, and his Revocable Trust's financial records.  Whereas the R&R allowed the parties to discover each other's respective financial records from January 1, 2009 until December 31, 2013, R&R at 56, the Wellin Children contend that Keith's financial records—specifically, Keith's credit card records—from January 1, 2014 until Keith's death on September 14, 2014 are also relevant to the following issues: (i) Wendy's influence on and control over Keith's spending; (ii) whether Keith's financial condition was actually threatened; and if so, (iii) whether the Wellin Children caused such threat. Wellin Children Objection, 3.  The Wellin Children also argue that the financial records showing the distributions and expenditures of Keith's estate and the Revocable Trust during the period following Keith's death on September 14, 2014 are relevant to determine damages in Wellin II, as it may be necessary to demonstrate what the Wellin Children's inheritance would have been "but for" Wendy's tortious action.  Id. at 11.

Wendy's replies do not contest the Wellin Children's argument regarding the financial records for the period from January 1, 2014 to Keith's death.  Interested Party Wendy Reply, 4 ("[Wendy]" has no objection to [the] deadline [for financial discovery] being moved to the date of Keith's death.").  Therefore, the court will modify the R&R to allow for the discovery of Keith's financial records from January 1, 2014 until September 14, 2014.  However, Wendy does dispute the Wellin

5

Children's contention that the financial records of Keith's estate and the Revocable Trust following Keith's death are discoverable. Id. at 3–5; Plaintiff Wendy Reply, 3. Wendy's primary argument, set forth in both of her replies, is that the discoverability of distributions from Keith's estate and the Revocable Trust is not properly before the court because that issue was not addressed in the motions or the R&R. Interested Party Wendy Reply, 3–5; Plaintiff Wendy Reply, 3.

A review of the underlying motions, however, reveals that the issue is properly before the court. Wendy's Motions for Protective Order I and II were filed in response to various subpoenas *duces tecum*, seeking financial and related documents for the preceding five or ten years from banking institutions where Keith and Wendy held accounts. Wendy Motion for Protective Order I, 3; Wendy Motion for Protective Order II, 4. These subpoenas, all of which were issued after Keith's death, did not indicate that the relevant five or ten year period was to be measured from Keith's death. Rather, a fair reading of the subpoenas indicates that the five or ten year period should be measured from the date of the subpoeana. See, e.g., Motion for Protective Order II, Ex. 2 (subpoena to American Express, dated February 9, 2015, requesting "[a]ll documents and correspondence . . . over the past five years"). Thus, both motions were directed at subpoenas seeking to discover financial records after Keith's death. Wendy's Motion for Protective Order II clearly recognized this fact, arguing that "the [c]ourt should limit discovery of financial information to the years 2009 through [Keith's] death on September 14, 2014." Wendy Motion for Protective Order II, 6.

As to the Revocable Trust, the same subpoena to American Express explicitly sought information pertaining to accounts held "in the name of, for the benefit of, or under the control of . . . the Revocable Trust." Wendy Motion for Protective Order II, Ex. 2. Wendy even argued that the subpoena was overbroad, in part, because it requested account information pertaining to the Revocable Trust. Wendy Motion for Protective Order II, 4. Therefore, to the extent Wendy's motions sought to protect financial records from the period following Keith's death, regarding accounts held in Keith's name and by the Revocable Trust, those motions necessarily implicated the discoverability of distributions from Keith's estate or the Revocable Trust during that period.

Wendy does not directly dispute the Wellin Children's rationale that financial records of Keith's estate and the Revocable Trust may be relevant in determining the appropriate damages, but instead contends that this rationale only applies to the Wellin Children's cause of action for intentional interference with inheritance, which has not been recognized in South Carolina. Interested Party Wendy Reply, 4. This argument is unavailing. This information might also be relevant to the damages under the Wellin Children's claim for breach of contract, which alleges that "as a direct and proximate result of Wendy's breaches of [the prenuptial agreement], Wendy was able to exercise undue influence and coercion over Keith . . . reducing or eliminating the children's inheritance, [and] transferring assets to Wendy that he otherwise would have bequeathed to the children." Compl. ¶ 152. The same could be said for the Wellin Children's claim for constructive trust, which alleges that "Wendy obtained significant assets through . . . testamentary bequests that she would

7

not have received—and that would have been conveyed to the [Wellin Children]—but for her course of improper conduct." Id. at ¶ 168.

In the alternative, Wendy suggests that the estate's accounting that will be used in the probate court should provide sufficient information for the Wellin Children's damage calculations. Interested Party Wendy Reply, 4. Though Wendy cites no authority for why this alternative should prevent the Wellin Children from obtaining the records in question, the court notes that it must limit the extent of discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Wendy has offered nothing beyond this bare assertion to indicate why the probate court's accounting would be a suitable alternative. Nor is it clear that waiting for the probate proceedings to conclude is a more convenient or less burdensome means of obtaining such information. Because Wendy has not provided sufficient information to make the requisite determinations to limit discovery under Fed. R. Civ. P. 26(b)(2)(C)(i), the court finds that financial records for Keith's accounts and the Revocable Trust from the period following Keith's death through trial are discoverable.

### B. Wendy's Objection to the R&R

Wendy, in her capacity as an interested party, argues that the R&R should allow for the redaction of specific vendor information from the American Express credit card records subpoenaed by the Wellin Children. Wendy Objection, 2, 4, and 6. In Wendy's Motion for Protective Order II, Wendy argues that, even if the general types and amounts of her spending were relevant, the names of vendors,

corresponding amounts, and other transaction details are not relevant, and the court should therefore limit the subpoenas to prevent discovery of such irrelevant information. Motion for Protective Order II, 7. The special master's R&R denied this request, finding that it would be overly burdensome to require third-party institutions to execute the redactions, and that the nature, date, and general location of the individual expenditures were relevant. R&R at 63. The special master did recommend a consent order, whereby the subpoenaed party would send the records to Wendy, who would redact the specific vendor information prior to production, but still provide complete information regarding the nature, date, and general location of each expenditure. Id. at 64. The Wellin Children did not accept this proposal, and Wendy now contends that the court should impose such an arrangement on the parties. Wendy Objection, P. 5–6. Again, Wendy argues that the specific vendor information is irrelevant, and under the proposed redaction procedure, the process is not overly burdensome since Wendy will bear the costs of redaction herself.[1] Id.

The Wellin Children argue that the specific information Wendy wishes to redact is relevant, and even if it were not, relevance-based redactions are nevertheless improper. Wellin Children Reply, 2. The Wellin Children offer a number of hypothetical scenarios to illustrate the ways in which the specific details of Wendy's spending might be relevant. Id. at 6–7. The basic theme of these hypotheticals

---

[1] Wendy also argues that the Wellin Children's discovery practices are abusive and exceed the limitations contemplated by Rule 26 and 45. Wendy Objection, 6 n.3. Though Wendy goes on to describe why these practices are abusive, she does not clearly argue that the subpoenas are unduly burdensome under Fed. R. Civ. P. 26(c) purely due to abusive intent, rather than overbreadth. To the extent this is part of Wendy's argument, the court does not find that good cause exists to protect Wendy from the Wellin Children's subpoenas on this theory. The court notes that the Wellin Children's response offers reasonable justifications for their subpoenas to Wendy's associates, see Wellin Children Reply, 8 n.3, and undermines Wendy's claim that the very fact that these associates were subpoenaed "demonstrate[s] clearly that the Wellin Children desire to hound and harass [Wendy and her associates]." Wendy Objection, 6 n.3.

appears to be that the details of Wendy's spending are reasonably likely to illuminate the extent to which Wendy spent money for her own benefit, or possibly her friends' and relatives' benefit, as opposed to Keith's benefit (i.e. on items for Keith, on dinners with Keith, etc.).[2] Id.  The Wellin Children contend that these facts bear upon: (i) their defense in Wellin I—that Wendy was the true cause of any financial peril Keith may have faced; (ii) their claims in Wellin II—that Wendy intentionally interfered with the their inheritance, that Wendy breached provisions of the prenuptial agreement prohibiting her control over Keith's "separate property," and that Wendy breached her fiduciary duty to Keith as his power of attorney; and (iii) Wendy's potential defense that she acted as Keith's constant caretaker.[3]

The court finds these arguments persuasive.  The Wellin Children have articulated the type of information they expect to find by obtaining the American Express records in their unredacted form.  These expectations are consistent with their theory of the case, and there appears to be a reasonable possibility that finding such information—or the absence of such information—would produce admissible evidence with respect to the Wellin Children's claims.  Even if the specific locations where Wendy shops and eats did not directly show the extent which Wendy used the American Express account for her own benefit, the court agrees that this information would allow the Wellin Children to more effectively investigate the nature of Wendy's spending.[4]

---

[2] The Wellin Children also argue that the information may lead to discovery of when Wendy dined with certain doctors who have been identified as witnesses regarding Keith's capacity and with whom she was close friends.  Wellin Children Reply, 7.

[3] Though not specified, it seems that this potential defense may be applicable to the Wellin Children's undue influence claims in Wellin II.

[4] Wendy's objection to the R&R does not specifically request that the court prohibit the Wellin Children from asking about the specifics of her expenditures or discovering the information in some

Even if the court determined that the specific information Wendy wishes to redact was, itself, irrelevant, there would still be reason not to allow the proposed redactions. Courts have recognized that relevance-based redactions are disfavored, because they "breed suspicions, and they may deprive the reader of context." In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig., 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (quoted in Wellin I, ECF No. 175 at 5–6); see also In re MI Windows & Doors, Inc. Products Liab. Litig., No. 2:12-MN-00001, 2013 WL 268206, at *3 (D.S.C. Jan. 24, 2013) ("The redaction of irrelevant information, even when sparingly done, deprives plaintiffs of context for the relevant information."); David v. Alphin, 2010 WL 1404722, at *7 (W.D.N.C. Mar. 30, 2010) ("[A] party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case.") (quoted in Wellin I, ECF No. 175 at 5–6). Redactions are especially discouraged in cases where, as here, a confidentiality order exists that renders the redactions unnecessary. See In re MI Windows, 2013 WL 268206, at *3 ("[T]he concerns upon which [defendant] bases its need to redact are alleviated by the confidentiality order that is already in place, which 'prevents non-litigants from viewing sensitive information.'"); Alphin, 2010 WL 1404722, at *7 ("[P]rotective orders are available to shield irrelevant, but important-to-keep-confidential information, and unless the protective order permits partial production, a document should be produced in its entirety." (quoting Evon v. Law Offices of Sidney Mickell, 2010 WL 455476, at *2 n.1 (E.D. Cal. Feb. 3, 2010))); In re State St. Bank & Trust,

---

other way. However, if the court allows for the redaction, while still permitting the Wellin Children to seek the information in subsequent discovery, the redactions would only serve to delay and hinder such discovery.

2009 WL 1026013, at *1 ("In the case at bar, the stipulated protective order makes it unnecessary to redact any portion of a document on the ground that the portion is non-responsive and irrelevant.").

The court recognizes that Wendy has not made the same type of unilateral redactions faced earlier in this litigation, when redactions were made without even seeking court approval. Wellin I, ECF No. 175 at 5–6. Nevertheless, the arguments against unilateral redaction have some force in this case, where it appears the redacted information could provide valuable context—even assuming it was not, itself, relevant. Moreover, redaction should be unnecessary in this case, as the August 1, 2014 confidentiality order allows parties to designate documents containing "sensitive personal information" as confidential.[5] Wellin I, ECF No. 185.

---

[5] The confidentiality order requires that documents be designated as confidential "prior to, or contemporaneously with, the production or disclosure of the documents." Wellin I, ECF No. 185 at 2. As applied to the American Express records in question, this poses a problem for Wendy, who does not control the timing of American Express's disclosure of the documents. Under the circumstances, the court finds it appropriate to require the Wellin Children to treat the documents produced in response to the American Express subpoena as having been duly designated as confidential pursuant to the August 1, 2014 confidentiality order, unless and until, Wendy shall have notified the Wellin Children that they need not treat such documents as confidential and no other party has designated such documents as confidential.

## IV.  CONCLUSION

For the foregoing reasons, the court **MODIFIES** the R&R to extend the period for which Keith's financial records are discoverable from January 1, 2014 until September 14, 2014, and the period for which Keith's estate's and the Revocable Trust's financial records are discoverable from December 31, 2013 until trial, and **ADOPTS** the R&R, as modified.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 30, 2015**
**Charleston, South Carolina**